UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN MARTIN, et al.<br><br>Defendants. | No. CR 07-1205 (A) CBM<br><br>ORDER DENYING DEFENDANT'S SECOND RENEWED MOTION TO SEVER DEFENDANT ZIPPER FROM CO-DEFENDANT MARTIN |

The matter before the Court is Defendant Travis Zipper's Second Renewed Motion to Sever Defendant Zipper from Co-Defendant Martin ("Motion" or "Motion to Sever"). The parties appeared before the Court for oral argument and upon consideration of the papers and arguments presented, the Court DENIES Defendant's Motion to Sever.

## BACKGROUND

I. **Relevant Facts**

Defendants Brian Martin, Travis Zipper and Keith Robbison are accused of participating in a conspiracy to extort money by threats and force from various individuals in connection with the collection of a loan. The Government alleges that in 2007, Martin wired approximately $500,000 to an individual named

Kenneth Montlouis with the expectation that Montlouis would generate a one hundred percent return on the investment within less than a month. (Gov't Opp. at 2:20-3:3.) When Martin did not receive the investment return that he expected, he traveled to Africa, where Montlouis was then staying, to investigate. (*Id.* at 3:4-7.) Although Zipper and Robbison were scheduled to accompany Martin, Zipper missed the flight. (*Id.* at 3:7-11.) Martin and Robbison met with Montlouis in Africa and Martin threatened to harm Montlouis physically if he did not receive his money back. (*Id.* at 3:15-16.) Subsequently, with Robbison's help, Martin had Montlouis placed in jail in Africa. (*Id.* at 3:17-18.)

After returning from Africa, Martin, with the help of Zipper and Robbison, allegedly attempted to recover his money by threatening some of Montlouis' associates. (*Id.* at 3:19-22.) Among other things, Martin sent threatening text messages and Robbison paid an unannounced threatening visit to Montlouis' girlfriend. (*Id.* at 3:22-26.) According to the Government, Martin discussed his threats against at least one of Montlouis' associates with Zipper during a recorded telephone call in late April 2007. (*Id.* at 3:28-4:5.) At approximately the same time, Martin learned that Montlouis had been released from custody in Africa and called an individual in Africa to solicit his murder. (*Id.* at 4:9-13.)

In May 2007, Martin learned that an individual named Jonathan Dean owed Montlouis a large sum of money. (*Id.* at 4:16-18.) On May 7, 2007, Martin, Zipper and Robbison traveled to California to meet Dean at a restaurant. (*Id.* at 4:18-20.) Martin told Dean that he could pay his debt to Montlouis by giving Martin $500,000. (*Id.* at 4:24-27.) He purportedly implied that, if Dean did not pay the money, he would be injured. (*Id.* at 4:27-5:1.) During the conversation, Zipper and Robbison were allegedly sitting at another table within listening distance. (*Id.* at 4:20-24.) Over the next few months, Dean made sporadic payments totaling tens of thousands of dollars by depositing money into Zipper's bank account. (*Id.* at 5:2-5.) When Dean missed a payment, Martin would send a

text message to Dean, implying that he, his family members, or his roommates would be physically harmed. (Gov't Opp. at 5:5-8.)

The Government alleges that Zipper also talked with Dean about making payments and implied that there were others who might harm Dean if he did not pay. (*Id.* at 5:8-12.) Specifically, the Government cites a meeting between Dean, Martin, and Zipper, which occurred on June 2, 2007. (*Id.* at 5:13-14.) Dean had previously met with FBI agents and was wearing a body wire at the meeting. (*Id.* at 5:14-16.) Before Martin arrived, Zipper told Dean that he had been involved since the beginning, but that he did not have full knowledge of all that had happened; he denied knowing that Dean's family had been threatened. (*Id.* at 5:16-21.) Once Martin arrived, Zipper told Dean that Montlouis was "not getting out" of Africa. (*Id.* at 5:21-24.) Martin then added that Montlouis was going to be murdered and that he would have to go to trial as a result. (*Id.* at 5:24-26.) He said that Dean should watch more movies about the mob to learn "respect," and that if Dean failed to make additional payments, he and his family would be in "the God awful worst situation you could ever imagine." (*Id.* at 5:26-6:2.)

## II. Procedural History

### A. Allegations Against Zipper in the Superseding Indictment

Zipper is charged with (1) conspiracy under 18 U.S.C. § 371 to extort money in violation of 18 U.S.C. § 1951 and to travel in interstate commerce with intent to facilitate the promotion, management, establishment, and carrying out of extortion in violation of 18 U.S.C. § 1952(a) and California Penal Code § 520 (SI[1] at Count 1); (2) extortion under the Hobbs Act (18 U.S.C. § 1951 and 18 U.S.C. §2(a)) through the use of wrongful and threatened force, violence, and fear to induce consent. (SI at Counts 3, 9, 12); and (3) travel in interstate commerce in violation of the Travel Act (18 U.S.C. § 1952(a)(3)) with the intent to promote extortion in violation of California Penal Code § 520 (SI at Count 11).

---

[1] Citations to SI are to the Superseding Indictment, filed on May 7, 2008.

In support of these counts, the Government alleges, among other things, that:

- Martin discussed some of this threats against others with Zipper (SI at ¶¶ 7d, 8f);
- Zipper accompanied Martin to several meetings with Dean to collect the debt Dean owed to Montlouis (SI at ¶¶ 7e, 7i, 8j, 8hh, 8ii, 8jj);
- Martin and Zipper instructed Dean to deposit payments into Zipper's bank account (SI at ¶ 7g);
- when Dean failed to make certain payments, Martin and/or Zipper sent or caused to be sent text messages to Dean implying that Dean, his roommates, and/or his family would be harmed if Dean did not make future payments (SI at ¶¶ 7h, 8cc, );
- in order to induce payment, Martin, Zipper and Robbison told Dean that Montlouis was going to be physically harmed or murdered (SI at ¶¶ 7j, 8kk); and
- Martin and Zipper caused Dean to deposit several checks into Zipper's bank account made payable to "Travis Zipper" as well as make Dean's parents transfer money to Zipper (SI at ¶¶ 8p, 8q, 8u, 8v, 8y, 8z, 8dd).

### B. The Court's June 9, 2008 Order Denying Zipper's Motion to Sever

On June 9, 2008, Judge Margaret M. Morrow[2] ruled on Zipper's renewed motion to sever, which was filed on May 19, 2008 [Doc. No. 63.].[3] [Doc. No. 67.] Zipper proffered four arguments in favor of severance: (1) there is a disparity in the weight of the evidence against Zipper as compared to Martin; (2) Zipper and Martin have antagonistic defenses; (3) there is a risk of *Bruton* prejudice because both Zipper and Martin have given statements to the FBI that referenced one another; and (4) there is a possibility that Zipper will call Martin as a witness if their trials are severed. (Order at 2.) Denying Zipper's motion, the Court found that Zipper would not be prejudiced by a joint trial and rejected each of Zipper's arguments as follows:

- *First*, the Court found that Zipper "failed to establish either (1) that the evidence is so complex that the jury will have a difficult time compartmentalizing it or (2) that any such difficulty could not be cured by

---

[2] This case was transferred to Judge Consuelo B. Marshall on October 3, 2008.
[3] Zipper had filed his original motion to sever on February 27, 2008. [Doc. No. 48.] However, the court did not rule on this motion because the Government advised that it intended to supersede the indictment. (Order at 2.)

4

limiting instructions." (Order at 6.) The Court cited authority supporting joint trials in conspiracy cases because "much of the same evidence would be admissible against each [defendant] in separate trials" because "evidence that tends to establish the existence and scope of the overall conspiracy is admissible against an individual defendant even if that defendant is not directly connected to the evidence." (*Id.*) The Court further found that Zipper failed to explain why any potential prejudice could not be addressed through limiting instructions and held that in this case, limiting instructions would be sufficient to alleviate any risk of prejudice. (*Id.* at 7.)

- *Second,* the Court found that Zipper failed to show that his and Martin's defenses are truly antagonistic. (*Id.* at 8.) Zipper's defense is that he was not aware of any illegal activity, threats or extortion. (*Id.*) If Martin prevails on his defense, that his actions were legal, then his defense will support Zipper. (*Id.*) Accordingly, the Court found that the two defenses were not antagonistic, but that they coordinated coherently. (*Id.*)

- *Third*, the Court rejected Zipper's *Bruton* argument because Zipper failed to identify the statements he feared would be introduced in violation of his constitutional rights. (*Id.* at 9.) In addition, the Court also rejected Zipper's argument because he failed to demonstrate that any statements could not be adequately redacted or appropriate limiting instructions could not be given. (*Id.*) In addition, the Government represented that "insofar as there are post-arrest statements that reference Zipper, either expressly or by implication, the government will appropriately redact those statements in compliance with [*Gray*] or it will not introduce them." (*Id.*)

- *Fourth*, the Court found that Zipper had not met his burden in support of his argument that severance is required when a co-defendant offers to testify in a separate trial. (*Id.* at 10.) The Court found that Zipper did not state unequivocally that he could or would call Martin at the severed trial. (*Id.*) In addition, Zipper failed to explain how Martin's testimony would be "substantially exculpatory." (*Id.*)

In closing, the Court informed Zipper that it would not entertain further motions for severance based on the present record and permitted Zipper to renew his motion for severance "if he secures a commitment from Martin to offer substantially exculpatory evidence addressing portions of the government's case against Zipper." (*Id.* at 11.) The Court further "cautioned" Zipper "not to renew his severance motion on the basis of proposed testimony by Martin unless he can

satisfy the standard discussed in this order." (*Id.*)

## LEGAL STANDARD

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires. However, "[j]oinder is the rule rather than the exception." *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988); *see also United States v. Camacho*, 528 F.2d 464, 470 (9th Cir. 1976) ("Joint trials are the rule rather than the exception; and there is a substantial public interest in the joint trial of persons charged with committing the same offense or with being accessory to its commission")(internal citations omitted). Public interest favors joint trials because they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). In addition, a joint trial also helps to avoid the "scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). In cases where co-defendants are charged with conspiracy, the Ninth Circuit has observed that a joint trial is "particularly appropriate…, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

As a result, district courts should grant severance only where joinder is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy." *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980). To justify severance based on a co-defendant's offer to testify in a separate trial, the

1  defendant must show: "(1) that he would call the defendant at a severed trial,
2  (2) that the codefendant would in fact testify, and (3) that the testimony would be
3  favorable to [him]." *United States v. Reese*, 2 F.3d 870, 892 (9th Cir. 1993).
4  Favorable testimony means evidence that must be "substantially exculpatory."
5  *United States v. Pitner*, 307 F.3d 1178, 1181 (9th Cir. 2002) (quoting *Reese*, 2
6  F.3d at 892). "[T]estimony is not substantially exculpatory if it would merely
7  contradict portions of the government's proof…leaving other inculpatory evidence
8  that in and of itself would be sufficient to support a conviction." *Reese,* 2 F.3d at
9  892 (citations omitted). District courts are therefore "required to consider the
10 weight and credibility of the proposed testimony and the economy of severance."
11 *Reese,* 2 F.3d at 892.

## DISCUSSION

Zipper asserts that he has satisfied all of the elements required to mandate a severance where one defendant indicates he would testify on behalf of another defendant at a separate trial. In support, Zipper has submitted to the Court his own affidavit and an affidavit from Martin, both of which are filed under seal.

First, Zipper asserts in his motion that his Affidavit "establishes that [he] will call Brian Martin as a witness in his defense at a severed trial." (Mot. at 9:11-12.) Second, Zipper asserts that Martin's testimony would

> establish that Travis Zipper could not hear the conversation during the meeting that Brian had with Jonathan Dean on May 7, 2007, it would establish that Mr. Zipper was not aware of the content of text messages that Brian sent to Jonathan Dean and/or people associated with Jonathan Dean, and it would establish that Brian Martin did not discuss with Travis Zipper any of the alleged threats that he made to Dean as alleged in the Superseding Indictment.

(Mot. at 9:3-9.) Finally, Zipper asserts that Martin's affidavit "establishes that Zipper will not receive the benefit of this testimony at a joint trial. (Mot. at 9:9-10.) Having reviewed the affidavits and the arguments by the parties, the Court finds that Martin's testimony would not be substantially exculpatory, and, for that reason, denies Zipper's Motion to Sever.

7

1  Zipper's defense to the allegations against him is that he was unaware of
2  Martin's unlawful activity. As outlined above, Martin's testimony consists of
3  three points: (1) that Zipper could not hear the conversation Martin had with Dean
4  on May 7, 2007; (2) that Zipper was not aware of the content of the text messages
5  Martin sent to Dean or others associated with Dean; and (3) that Martin has never
6  discussed any threats he purportedly made with Zipper. (Mot. at 9:3-9.) While
7  some of this testimony may support Zipper's claim that he was unaware of
8  Martin's activities, none of it, standing alone or taken together, is substantially
9  exculpatory.

10  As an initial matter, the Court expects that there would be an objection to at
11  least the first two parts of Martin's testimony, which the Court expects would be
12  sustained. Without testimony from Martin stating that "Zipper could not hear the
13  conversation" with Dean and that "Zipper was not aware of the content of text
14  messages", the Court is left with very little that would appear to be exculpatory,
15  much less substantially exculpatory.

16  Second, there remains ample evidence to support the Government's case
17  against Zipper, including evidence of Zipper's knowledge of and involvement in
18  the conspiracy. In its opposition, the Government states that the case against
19  Zipper consists, among other things, of the following:

- Bank records establishing that Zipper collected most, if not all, of the extortion payments (Gov't Opp. at 13:5-7);
- At least one threatening text message that Zipper sent to Dean (*Id.* at 13:7-8);
- Zipper's presence as a bodyguard at meetings during which Martin threatened Dean (*Id.* at 13:8-10.)

Third, there is other evidence that contradicts Martin's testimony that he never discussed with Zipper any threats that he purportedly made. For example, the Government specifically cites to a recorded telephone call between Martin and

Zipper during which Martin discussed his efforts to threaten one of Montlouis' associates. (Gov't Opp. at 3:28-4:5.)

Fourth, as an alleged co-conspirator, Martin's testimony will necessary suffer from credibility issues. *See Pitner*, 307 F.3d at 1182 (The court must consider the "possible weight and credibility of the predicted testimony.") Martin's credibility is undermined at the outset, as he will be subject to lengthy cross examination concerning his role in the case, including "his sending of profane, racist, and threatening emails; his threatening behavior; his attempted murder; and his boasting about his criminal history." (*Gov't Opp.* at 14:12-17.)

The combination of other evidence in support of the Government's case against Zipper, the relative weakness of Martin's testimony, and Martin's credibility issues supports the conclusion that Martin's proffered testimony would not be "substantially exculpatory" warranting a separate trial.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendant's Second Renewed Motion to Sever Defendant Zipper from Co-Defendant Martin.

IT IS SO ORDERED.

DATED: January 30, 2009          By _____
                                    CONSUELO B. MARSHALL
                                    UNITED STATES DISTRICT JUDGE