1
2
3
4
5
6
7
8       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10

11      UNITED STATES OF AMERICA,          )   No. CR 07-1205 (A) CBM
                                           )
12                    Plaintiff,           )
                                           )   ORDER GRANTING IN PART AND
13            v.                           )   DENYING IN PART DEFENDANT
                                           )   ZIPPER'S MOTION IN LIMINE TO
14      BRIAN MARTIN, et al.               )   EXCLUDE OVERT ACTS OF
                                           )   MARTIN AND ROBBISON THAT
15                    Defendants.          )   WERE NOT IN FURTHERANCE OF
                                           )   THE CONSPIRACY ALLEGED
16                                         )   AGAINST ZIPPER
                                           )
17                                         )
                                           )
18                                         )
19      _____)

20           The matter before the Court is Defendant Travis Zipper's Motion to

21      Exclude Overt Acts of Martin and Robbison That Were Not in Furtherance of the

22      Conspiracy Alleged Against Zipper (the "Motion"). [Doc. No. 120.] The parties

23      appeared before the Court for oral argument and upon consideration of the papers

24      and arguments presented, the Court GRANTS IN PART and DENIES IN PART

25      Zipper's Motion. Although the Motion is styled as a motion to exclude acts "not

26      in furtherance of the conspiracy alleged against Zipper," the Court construes the

27      Motion as requesting that the Court determine that certain overt acts of Martin and

28      Robbison were not in furtherance of the conspiracy, and if the Court so finds, to

                                            1

1 | preclude the Government from offering the evidence at trial.

2 | ## BACKGROUND

3 | Defendant Brian Martin ("Martin") is charged with twenty-four counts in

4 | the Second Superseding Indictment (the "Indictment").  The charges range from

5 | conspiracy to interfere with commerce by threats and to travel interstate in aid of

6 | racketeering activities in violation of 18 U.S.C. § 371 to collection of extensions

7 | of credit by extortionate means in violation of 18 U.S.C. § 894(a)(1).  Defendant

8 | Travis Zipper ("Zipper") is charged with seven counts in the Second Superseding

9 | Indictment.  The charges against him range from conspiracy to interfere with

10 | commerce by threats and to travel interstate in aid of racketeering activities in

11 | violation of 18 U.S.C. § 371 to receiving proceeds of extortion in violation of 18

12 | U.S.C. § 880.  Defendant Keith Robbison ("Robbison") has pled guilty to Count I

13 | of the First Superseding Indictment, which alleged conspiracy to interfere with

14 | commerce by threats and to travel interstate in aid of racketeering activities in

15 | violation of 18 U.S.C. § 371.  Robbison is not charged in the Second Superseding

16 | Indictment.

17 | ### A.    Relevant Factual Allegations

18 | The charges in this case arise out of an alleged attempt by Martin to obtain

19 | money that he lost through a business investment.  The Government alleges that in

20 | 2007, Martin invested approximately $500,000 with an individual named Kenneth

21 | Montlouis ("Montlouis").  (Indictment at ¶¶ 7a; 8a.)  When Martin did not receive

22 | the investment return that he expected, he traveled to Africa with Robbison, where

23 | Montlouis was then staying, to recover his money.  (*Id*. at ¶¶ 7b, 8a.)  Although

24 | the Indictment does not allege that Zipper traveled to Africa with Martin and

25 | Robbison, the Government has previously asserted that Zipper was scheduled to

26 | accompany Martin, but that he missed his flight.  (Gov't Opp. to Mot. to Sever at

27 | 3:7-11.)  Martin and Robbison met with Montlouis in Africa and Martin

28 | threatened to harm Montlouis if he did not receive his money back.  (Indictment at

¶¶ 7b; 8b.)  Subsequently, Martin had Montlouis imprisoned in Africa.  (*Id*. at ¶ 7b.)

After returning from Africa, Martin allegedly attempted to recover his money by threatening Montlouis' girlfriend and some of Montlouis' associates. (Indictment at ¶¶ 7c, 8d-e.)  When Martin was unable to collect money from Montlouis and others, Martin asked an individual in Africa to murder Montlouis. (*Id*. at ¶¶ 8g, i, m.)

In May 2007, Martin learned that an individual named Jonathan Dean ("Dean") owed Montlouis money.  (*Id*. at ¶ 7b.)  On or about May 7, 2007, Martin, Zipper and Robbison traveled to California to meet Dean at a restaurant.  (*Id*. at ¶¶ 8j.)  Martin told Dean that he could pay his debt to Montlouis by giving Martin $500,000.  (*Id*.)  He purportedly implied that, if Dean did not pay the money, he would be injured.  (*Id*. at ¶ 8k.)

On May 23, 2007, in an attempt to collect money from Dean, Martin allegedly induced Dean to sign a contract that stated Dean would pay Martin $500,000. (*Id*. at ¶ 8o.)  Over the next few months, Dean made sporadic payments totaling tens thousands of dollars by depositing money into Zipper's bank account. (Indictment at ¶¶ 8q-r.)  When Dean missed a payment, Martin and/or Zipper would send a text message to Dean, implying that he, his family members, or his roommates would be physically harmed.  (*Id*. at ¶¶ 7h, 8t, u, y, bb, cc, hh, kk.)  In addition, in order to induce Dean to pay, Martin, Zipper and Robbison repeatedly informed Dean that Montlouis was going to be physically harmed or murdered at Martin's request.  (*Id*. at ¶¶ 7j, 8p, ll, mm.)  On August 3, 2007, Martin, Zipper, and Robbison met Dean at a restaurant in Rancho Cucamonga to allegedly threaten Dean into making more payments. (*Id*. at ¶¶ 8x-y.)  As a result, on August 3 and August 6, 2007, Dean transferred additional money to Zipper. (*Id*. at ¶¶ 8z-aa.)

1 | **LEGAL STANDARD**

2 Zipper requests the Court to issue a limiting instruction as to certain

3 evidence Zipper asserts is not evidence in furtherance of the conspiracy alleged

4 against Zipper. (Mot. at 7:7-15.) Therefore, this Motion will be examined

5 pursuant to Federal Rule of Evidence 105, which provides that "[w]hen evidence

6 which is admissible as to one party or for one purpose but not admissible as to

7 another party or for another purpose is admitted, the court, upon request, shall

8 restrict the evidence to its proper scope and instruct the jury accordingly."

9 It is well-established that a participant in a conspiracy can and should be

10 held responsible for the actions of his co-conspirators in furtherance of the

11 conspiracy, even if he was unaware of those acts, or even of the very existence of

12 the co-conspirators. *See Blumenthal v. United States*, 332 U.S. 539, 556-558

13 (1947); *United States v. Daychild*, 357 F.3d 1082, 1098 (9th Cir. 2004). However,

14 in *United States v. Umagat*, the Ninth Circuit held that

15
16
17
18

> a defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy. Indicative of a defendant's understanding are the degree of his knowledge, actual or constructive, of the scope of the overall conspiracy, and the extent to which his own benefits depended on the success of the entire venture.

19 998 F.2d 770, 772-73 (9th Cir. 1993) (citations and quotations omitted). The

20 Ninth Circuit further held that, "circumstantial evidence and inferences drawn

21 from it may be sufficient to sustain a conviction of conspiracy." *Daychild*, 357

22 F.3d at 1097 (citations omitted).

23 | **DISCUSSION**

24 Zipper requests the Court to instruct the jury "that the allegations of

25 violence, attempt [sic] murder, and threats to others by Brian Martin, is [sic]

26 inadmissible against Travis Zipper." (Mot. at 16-19.) In particular, Zipper

27 requests that the limiting instruction include any evidence offered against Martin

28 regarding the following overt acts:

4

1

2  ¶ 7a:  Defendant[] Martin traveled with Keith Robbison to Africa in order to locate an individual ("K.M.") with whom defendant Martin had invested $500,000.

3  ¶ 7b:  After K.M. was unable to return this money to defendant Martin, defendant Martin threatened K.M. and caused him to be imprisoned.

4
   ¶ 7c:  After being unable to obtain money from K.M., defendant Martin attempted
5  to collect money from K.M.'s girlfriend ("E.G.") and business associates (including "M.O." and "C.T.") by impliedly threatening them and/or K.M. with
6  harm.

7  ¶ 7d:  Defendant Martin discussed some of his threats against others with defendant Zipper and a co-conspirator.

8  ¶ 8a:  On or about April 7, 2007, defendant Martin traveled with Keith Robbison from the United States to Ghana, Africa, to locate K.M.

9  ¶ 8b:  At a meeting in Africa attended by K.M., defendant Martin, and Keith Robbison on or about April 11, 2007, defendant Martin told K.M. in substance:
10 "mother fucker, I told you...don't mistake who you're dealing with....I told you I am not a normal business man."

11
   ¶ 8c:  On or about April 20, 2007, defendant Martin sent or caused to be sent to
12 E.G. a text message stating in substance: "Can you family contacts get me 500,000 today?"

13 ¶ 8d:  On or about April 21, 2007, after E.G. had failed to pay him money, defendant Martin sent or caused to be sent to E.G. a text message stating in
14 substance: "Not smart.  You are not thinking right.  Your choice.  Are you sure you want the outcome?"

15
   ¶ 8e:  On or about April 23, 2007, after E.G. had failed to pay him money,
16 defendant Martin sent or caused to be sent to E.G. a text message stating in substance: "What is your motive in playing games.  You better contact [M.O.] and
17 get the info to us today.  For your protection i would stop with the games[.]"

18 ¶ 8f:  On or about April 23, 2007, defendant Martin informed defendant Zipper about his efforts to threaten one of K.M.'s associates, C.T.

19 ¶ 8g:  On or about April 25, 2007, after being unable to collect money from K.M. or others, defendant Martin asked an individual in Africa ("C.") to murder K.M.

20 ¶ 8h:  On or about April 30, 2007, defendant Martin emailed one of K.M.'s associates, M.O., a picture of K.M. in handcuffs and asked M.O. to "advise your
21 time frame on paying" money to an associate of defendant Martin.

22 ¶ 8i:  On or about May 3, 2007, defendant Martin urged C. to complete the murder of K.M.

23
        Zipper argues that evidence regarding the foregoing allegations is
24
   inadmissible as to Zipper because the evidence is highly prejudicial and has no
25
   probative value as it relates to Zipper.  (Mot. at 6:19-20.)  Zipper further argues
26
   that the object of the conspiracy in this case is the alleged extortion of Dean and
27
   that it has nothing to do with Martin's activities in Africa or the alleged attempted
28

1  murder of Montlouis.

2  As an initial matter, the Court incorporates by reference its Order striking

3  Paragraphs 7b, 7c (after "E.G."), 8b, 8f, 8g, 8h, and 8i. (*See* Court Order re:

4  Defendant Martin's Motion to Dismiss.) Accordingly, for the reasons stated in

5  that Order, the Court grants Zipper's Motion with respect to these Paragraphs.

6  As for the remaining Paragraphs (7a, 7c (before "E.G."), 7d, 8a, 8c, 8d, and

7  8e), the Court denies Zipper's Motion. In this case, Zipper is alleged to be part of

8  a conspiracy and the evidence that Zipper seeks to limit is direct evidence of

9  Martin and Robbison's actions in furtherance of the conspiracy. The evidence,

10  although not alleged to have been committed by Zipper, is alleged to have been

11  committed by his co-conspirators. Once the Government establishes its prima

12  facie case of the conspiracy, this evidence is admissible against Zipper.

13  Independently, evidence in support of Paragraph 7d is also admissible

14  because it specifically alleges that Martin discussed some of his threats against

15  others with Zipper. Finally, as discussed in this Court's Orders regarding

16  Defendant Martin's Motion to Dismiss and Defendants' Rule 404(b) Motions,

17  evidence regarding the allegations of Paragraphs 7a, 7c (before "E.G."), 8a, 8c,

18  8d, and 8e, is inextricably intertwined with the offenses charged in this case.

19  Thus, the evidence is directly relevant to the existence and actions of the

20  conspiracy of which Zipper is alleged to be a member.

21  During oral argument, the Court advised the parties that prior to allowing

22  the type of evidence described in Zipper's Motion to be admissible against Zipper,

23  or Martin, the Court would make preliminary findings, based on a prima facie

24  showing, that the conspiracy existed, that Martin, Zipper, and/or Robbison were

25  members of the conspiracy, and that the proffered evidence was in furtherance of

26  the conspiracy.

27  ## CONCLUSION

28  Based on the foregoing, the Court GRANTS IN PART and DENIES IN

PART Defendant Zipper's Motion.  Specifically, the Court GRANTS Zipper's Motion as to Paragraphs 7b, 7c (after "E.G."), 8b, 8f, 8g, 8h, and 8i, which the Court has stricken in its Order on Defendant Martin's Motion to Dismiss.  The Court DENIES Zipper's Motion with respect to Paragraphs 7a, 7c (before "E.G."), 7d, 8a, 8c, 8d, and 8e.

IT IS SO ORDERED.

DATED:   February 20, 2009          By _____

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE